**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190777-U

Order filed December 6, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0777 Circuit No. 18-CM-1348 |
| SEAN C. KING, | ) ) ) | Honorable Edward A. Burmila, Jr. |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Holdridge and Lytton concurred in the judgment.

**ORDER**

¶ 1　　*Held*:　The trial court committed plain error in failing to question potential jurors on one of the principles codified in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and the evidence adduced at trial was closely balanced.

¶ 2　　　　A jury found defendant, Sean King, guilty of domestic battery perpetrated against his paramour, Alexis Kremer. At trial, Kremer, an officer from the Joliet Police Department, and a victim's advocate from the Will County State's Attorney's office testified to their experiences surrounding the matter at issue. Defendant presents multiple contentions of error on review. For the reasons that follow, we reverse and remand for further proceedings.

¶ 3                                     I. BACKGROUND

¶ 4        In June 2019, the State indicted defendant on two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (b) (West 2018); (*id.* § 12-3.2(a)(1)). One count alleged defendant struck Kremer about the body with a crowbar while the other count alleged defendant grabbed Kremer about the body.

¶ 5        Prior to trial, the State filed a motion *in limine* to admit prior acts of domestic violence committed by defendant against Kremer and her mother. The State alleged Kremer had suffered multiple unreported incidents of domestic abuse. The State then filed a second motion *in limine* to admit proof of other crimes. The State sought to introduce an incident where defendant was charged with telephone harassment of Kremer and violation of his domestic violence bail bond. The State also sought to bar the admission of evidence regarding Kremer's mental health.

¶ 6        Defense counsel objected to the State's evidentiary motions. Regarding the motion to admit proof of other crimes, counsel simply argued, "we would obviously be objecting. The prejudicial value of this is extremely high." The court granted the State's motions relating to defendant's prior acts but denied the motion seeking to bar evidence of Kremer's mental health.

¶ 7        During *voir dire*, the trial court admonished the jury on the principles codified within Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). The court failed to admonish the venire on the third principle concerning defendant's right not to present evidence.

¶ 8        At trial, the State began its opening statement with the following:

            "Alexis, I am gonna show you what a free abortion looks like. The

            State believes that the evidence will show that these were the words that

            were [hurled] by the defendant, Sean C. King, to his girlfriend, former

            fiancé, mother of his children, Alexis Kremer, before he picked up a

crowbar and hit her about the body and grabbed her by the neck, around the back of the house."

The State asserted defendant subjected Kremer to "legacy abuse" on three other specific dates.

¶ 9 The incident that is the subject of this appeal occurred in the early morning hours of June 19, 2018. Kremer testified that she and defendant were in a relationship for approximately three years. At the time of the incident, defendant was playing a video game while Kremer was sitting on a couch in the same room. Kremer asked defendant to turn the game off. She was exhausted due to her pregnancy. Defendant became irritated upon this request. He began calling her names and then things became physical. Defendant grabbed Kremer by the hair and dragged her across the floor. Defendant stated, "I'll show you what a free miscarriage looks like." Defendant then repeatedly struck her with a crowbar on her arm.

¶ 10 The trial court paused the proceedings, directing the jury to leave the room. The court then reversed the previous rulings regarding the State's two motions *in limine* concerning defendant's prior acts. The court opined that "these other instances are so prejudicial now in light of those felony facts that you've added to this case that I'm reversing myself."

¶ 11 Proceedings resumed with Kremer continuing her testimony. Kremer claimed she was struck again by defendant in the backyard of the home. The State introduced photographs into evidence that depicted various injuries to Kremer. The photos depicted small scratches and minor bruising to her arms and head.

¶ 12 On cross-examination, defense counsel asked Kremer if she tried to pop the tires on defendant's vehicle using a butter knife. Kremer denied the accusation. Counsel then asked if Kremer spoke with an advocate from the prosecutor's office about the matter. Specifically, counsel asked whether Kremer told the advocate that defendant physically subdued Kremer because of her

attempts to damage defendant's vehicle with a butter knife. According to Kremer, defendant instructed her to make the admission to the advocate that she attempted to damage his vehicle with a butter knife. Counsel also asked Kremer whether she told the advocate she wanted the charges dropped and that the incident at issue never occurred. Kremer could not recall saying the incident never happened nor that she wanted the charges dropped. Kremer further claimed she did not sleep on the day of the incident. She also told police defendant dragged her by her hair.

¶ 13        Officer Tyler Bayles of the Joliet Police Department testified. He met Kremer in the lobby of the department on the same day as the incident. Bayles observed swelling and bruising on Kremer's face. He also observed bruises on her right knee and left ankle. Kremer explained the incident to Bayles. Kremer stated she went to sleep, woke up, and then came to the department. Kremer stated that during the altercation she asked defendant to turn a video game off. The prosecutor then asked, "Specifically, did [Kremer] tell you any statements that the defendant told her during the incident?" Defense counsel objected; the court overruled the objection. Bayles responded that there were two notable statements made by Kremer. According to Kremer, defendant stated, "If I shut this off, will you shut the fuck up?" The State then asked Bayles if Kremer made any other statements to which defense counsel again objected, raising a hearsay objection to Bayles's testimony as to what Kremer said. The trial court overruled the objection, opining that Bayles could relay what Kremer told him in order to explain "as to why he continued the investigation." Bayles then stated that Kremer told him that defendant told her, "I will show you what [a] free abortion is."

¶ 14        The trial court admonished the jury that Bayles could relay the statement Kremer made to him outside of the courtroom to show "why he continued to investigate the case." The court further explained, "If someone came in and said to the officer, There's a space ship outside, that wouldn't

- 4 -

mean that was true. But it wou1d mean why the officer went outside and continued to investigate." Neither Bayles nor any other officer witnessed the altercation. On cross-examination, Bayles stated that Kremer did not tell him defendant dragged her by the hair. If she would have relayed that information to him, he would have put it in his report. On redirect, Bayles stated Kremer said that defendant struck her with a crowbar. The crowbar was not located.

¶ 15      The State rested following Bayles's testimony. Defense counsel moved for a directed finding, arguing, among other things, that defendant used reasonable force in subduing or attempting to disarm Kremer in order to protect his vehicle. The court denied the motion for a directed finding.

¶ 16      Samantha Kavaliunas testified in defendant's case-in-chief. Kavaliunas worked as a victim's advocate at the Will County State's Attorney's office, interviewing victims of domestic abuse. When a victim stated something in conflict with what was written in the police report, she documented it. Kavaliunas noted in a report that Kremer stated she wanted all the charges against defendant dropped and that the incident did not happen. Kavaliunas also documented on a later date that Kremer stated, "I went after his car to pop his tires with a knife. He did not get physical with me and tried to get the knife (butter knife) out of my hands to stop me from popping his tires." Kavaliunas stated the butter knife occurrence pertained to an incident separate from the one at issue. The report did not state the date that the butter knife incident took place. The advocate's reports were not published to the jury but were admitted into evidence. The defense rested.

The prosecutor began closing arguments by asserting,

> " 'Alexis I am going to show you what a free abortion looks like.'
> Those where the words that were stated by the defendant right before he
> struck our victim with a crowbar about the body."

¶ 17 The prosecutor, when explaining to the jury the requirements to find defendant guilty of domestic battery, averred,

> "Now, the second proposition. That Ms. Kremer was then a family or household member to the defendant. Now, that you have also heard. You heard testimony that the defendant and our victim, they had a relationship. They were boyfriend and girlfriend at the time. She was carrying his child, the child that he told her he would give a free abortion for."

¶ 18 The jury found defendant not guilty on the domestic battery count pertaining to striking Kremer about the body, but guilty on the domestic battery count regarding grabbing Kremer about the body (720 ILCS 5/12-3.2(a)(1), (b) (West 2018)).

¶ 19 During the sentencing hearing the court opined,

> "You know, I have only been doing this for 44 *** years almost 44 years, and I can't recall a case, and I have had cases from death penalty down to traffic offenses, where anybody would make as crass a statement to the mother of their child that let me give you a free abortion. Now, I know I am paraphrasing that but, I mean, the mere thought of somebody to say that is almost depraved, in my opinion. It is unconscionable. It is unconscionable."

¶ 20 The court sentenced defendant to 340 days in the Will County Jail without the benefit of day-for-day good time credit.

¶ 21 Defendant appeals.

¶ 22                                    II. ANALYSIS

¶ 23 On appeal, defendant presents numerous contentions of error. He argues (1) the court erred in admitting the hearsay testimony of Bayles; (2) the court failed to comply with Illinois Supreme

- 6 -

Court Rule 431(b) and the evidence is closely balanced; (3) defense counsel provided ineffective assistance on numerous grounds; and (4) the cumulative effect of the errors in the proceeding below deprived him of a fair trial.

¶ 24     We address defendant's claim the court failed to comply with Illinois Supreme Court Rule 431(b) and that the evidence is closely balanced as it is dispositive.

¶ 25     Illinois Supreme Court Rule 431(b) codifies our supreme court's decision in *People v. Zehr*, 103 Ill. 2d 472 (1984). The rule requires a trial judge to ask members of the venire, individually or as a group, whether they understand and accept: "(1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her[.]" Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 26     Defendant acknowledges he failed to preserve this issue, instead invoking the plain error doctrine of Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967). Plain error serves as a finite exception to procedural default. *People v. Jackson*, 2020 IL 124112, ¶ 81 (citing *People v. Herron*, 215 Ill. 2d 167, 177 (2005) (collecting cases)). We consider unpreserved error when a clear or obvious error occurs. *Id.* In the presence of such an error, we then determine whether "(1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* (citing *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007), citing *Herron*, 215 Ill. 2d at 186-87).

¶ 27    In addressing an assertion of plain error, it is appropriate to determine whether reversible error occurred at all. *Id.* (citing *People v. Hood*, 2016 IL 118581, ¶ 18). Here, the lower court failed to ask the venire whether they understood and accepted that the defendant was not required to offer any evidence on his own behalf. Having found error, defendant avers that the evidence adduced at trial was closely balanced. In determining whether the evidence at trial was closely balanced, a reviewing court evaluates the totality of the evidence and conducts "a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53.

¶ 28    The State's case rested primarily on the reliability of Kremer's testimony, as no one else that testified witnessed the events. Her credibility was called into doubt by her own testimony as well as subsequent testimony and evidence. Defense counsel asked Kremer if she told the victim's advocate that she wanted the charges against defendant to be dropped because the incident never happened. Kremer responded that she could not recall making that statement. The advocate testified that Kremer indeed requested that the charges be dropped because the incident never happened. That request was memorialized in a report entered into evidence.

¶ 29    Kremer also stated that she told police defendant dragged her by her hair. Bayles testified that Kremer did not tell him defendant dragged her by the hair. If Kremer would have told Bayles that defendant dragged her by the hair, he would have put it into his report. Further, an inconsistency arose when Kremer testified that she did not fall asleep after the incident while Bayles testified that Kremer came to the department after waking up.

¶ 30    Moreover, the jury acquitted defendant of the charge related to striking Kremer about the body with a crowbar. A review of the photo evidence reveals why, as it fails to support Kremer's allegation that she was repeatedly struck with a crowbar.

¶ 31 A qualitative, common sense assessment of the evidence reveals that this contest was closely balanced.

¶ 32 While we reverse the trial court on the failure to comply with Rule 431(b) and the closely balanced nature of the evidence, we must note that in the event of a retrial, the admission of the officer's testimony concerning the substance of Kremer's statements also constituted error.

¶ 33 A police officer may reconstruct the steps taken in an investigation and may describe the events leading up to defendant's arrest when such testimony is required to fully explain the State's case to the jury. *People v. Trotter*, 254 Ill. App. 3d 514, 527 (1993). However, there is a difference between an officer testifying to the fact that he spoke to a witness and an officer testifying to the contents of the conversation with that witness. *Id.* The investigative procedure exception does not allow the substance of any out-of-court statement or conversations for the purpose of establishing the truth of their contents to be placed into evidence. *Id.* Put another way, the testifying officer should not reproduce the contents of the conversation with a witness under this exception since such testimony is inadmissible hearsay. *Id.* (citing *People v. Gacho*, 122 Ill. 2d 221, 248 (1988)).

¶ 34 Allowing the officer to put the contents of his conversation with Kremer into evidence went beyond what the investigative exception to hearsay allows. The officer reproduced to the jury the verbatim statements Kremer made to him. The State then used one of the exact statements procured from the testimony of the officer throughout the trial, repeatedly reminding the jury that defendant told the victim who then told the officer that defendant was going to "show [Kremer] what a free abortion looked like."

¶ 35 Accordingly, we reverse and remand for further proceedings.

¶ 36 III. CONCLUSION

¶ 37          For the foregoing reasons, the judgment of the circuit court of Will County is reversed and the cause remanded.

¶ 38          Reversed and remanded.